# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**WESLEY I. JOHNSON,**
**D.O.C. #055448,**

      **Plaintiff,**

**vs.**                          **Case No. 4:23cv273-MW-MAF**

**OFFICER RAYNARD,**

      **Defendant.**
_____/

## <u>SECOND REPORT AND RECOMMENDATION</u>

Plaintiff is a pro se prisoner incarcerated in the Florida Department of Corrections. He is proceeding with in forma pauperis status, ECF Nos. 7-8, and the operative pleading is his second amended complaint, ECF No. 11.

Plaintiff alleged that he suffered a hemorrhagic stroke while in his dormitory at Gulf Correctional Institution. ECF No. 11 at 9. He was taken to the infirmary, but the nurses said there was nothing wrong with him and directed him to return to the dormitory. *Id.* Plaintiff says he could not comply with that order because he was experiencing right side paralysis. *Id.* He was then placed in a "strip cell," unattended, for 8-10 hours. *Id.* at

9-10.  The next morning, Defendant Raynard[1] and a nurse came into his

cell and ordered Plaintiff to get his "old ass up," with the nurse again saying

there was nothing wrong with him.[2]  *Id.* at 10.  Once again, Plaintiff said he

was "unable to move."  *Id.*  Defendant Raynard then said he would get

Plaintiff up "and began stomping on the plaintiff's right arm, leg, and

shoulder, ordering him to get up."  *Id.*  Plaintiff then responded

inappropriately and disrespectfully, which allegedly led to Defendant

Raynard repeatedly punching Plaintiff in the face.  *Id.*  Plaintiff said he

"suffered contusions and lacerations to his right arm, right leg, right

shoulder and upper back, face, and head from beating" inflicted by the

Defendant.  *Id.*  Plaintiff claims the Defendant used unnecessary and

excessive force against him "while he was partially paralyzed and

incapable of offering any resistance which would have necessitated such

force."  *Id.* at 14.  Plaintiff alleged in the complaint that he "exhausted his

---

[1] Plaintiff sued three nurses (names unknown) as well.  ECF No. 11.  However, Plaintiff subsequently voluntarily dismissed those Defendants from this case, *see* ECF Nos. 45 and 47, leaving Officer Raynard as the sole Defendant.

[2] To be clear, Plaintiff alleged that the incident happened in July 2022, ECF No. 11 at 9, but he has since clarified that the events at issue took place on June 11, 2022.  ECF No. 48 at 1; ECF No. 43 at 2.

administrative remedies with respect to all claims and defendants, except where doing so would have been fruitless." *Id.* at 11.

After service of process, Defendant Raynard filed a motion to dismiss, ECF No. 27, raising failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a), and Eleventh Amendment immunity as to the claim against the Defendant in his official capacity.  Specifically, Defendant said that Plaintiff "made "no specific factual allegation of his exhaustion" steps in the second amended complaint. *Id.* at 3.  Defendant then argued that Plaintiff did not complete any of the three-steps necessary for exhaustion and his grievance record shows no grievances were filed during the relevant time frame.  *Id.* at 4.

Plaintiff responded to the motion to dismiss, ECF No. 29, by claiming that inmates "must exhaust available remedies but need no exhaust unavailable ones." *Id.* at 1.  Plaintiff said he attempted to exhaust administrative remedies and filed multiple grievances but never received a response. *Id.* at 2.  He argued that the grievance process was not available to him.

In ruling on the motion to dismiss, Defendant's first argument was rejected because a prisoner is not required to present factual allegations

concerning exhaustion in the complaint.  *See* <u>Jones v. Bock</u>, 549 U.S. 199,

127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to

exhaust is an affirmative defense under the PLRA, and that inmates are not

required to specially plead or demonstrate exhaustion in their complaints.").

Additionally, because the Court is required to accept Plaintiff's version of

the facts as true when ruling on a motion to dismiss, and because Plaintiff

claimed that he did not have an available grievance process to exhaust, the

motion to dismiss was denied - without objection - as to the issue of

exhaustion.  ECF Nos. 30, 31.

The parties were then provided an opportunity to conduct discovery,

ECF No. 34, and at the conclusion of the discovery period, Defendant filed

a motion for summary judgment.  ECF Nos. 36-37, 39.  Defendant's motion

does not address the merits of Plaintiff's claims; instead, Defendant once

again raised the issue of exhaustion.  Plaintiff was advised of his obligation

to respond to the motion, ECF No. 40, and Plaintiff responded by filing an

amended response in opposition to the motion, ECF No. 46, along with an

amended declaration, ECF No. 48.

The Court was then confronted with conflicting declarations. Plaintiff

presented evidence to show that he attempted to exhaust administrative

remedies which were unavailable, and Defendant presented evidence to show he did not.  Therefore, an evidentiary hearing was held to resolve the dispute as to exhaustion and determine the proper ruling on Defendant's motion for summary judgment.  ECF Nos. 50-53.  That is because the issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement."  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)).  Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).  Notably, the Court is permitted to "make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[3]

---

[3] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376.  *See also* Springs v. Gielow, No. 3:14cv105-MCR-EMT, 2015 WL 1458273, at 28 (N.D. Fla. Mar. 28, 2015) (citing Taylor v. Watkins, 623 F.3d 483 (7th Cir. 2010), and Smith v. Wang, 452 F. App'x 292 (4th Cir. 2011) (unpublished)) (other citations omitted); *see also* Davis v. Sknee, No. 7:16-CV-237, 2017 WL 11457295, at *2 (M.D. Ga. Dec. 7, 2017), report and recommendation adopted, 2018 WL 9986808 (M.D. Ga. Jan. 10, 2018).

The evidentiary hearing was held on June 10, 2025.  ECF No. 53.

Following the evidentiary hearing, the parties were permitted to file

supplemental evidence.  ECF No. 54.  At this point, all relevant evidence

has been submitted and the summary judgment motion is ready for a

ruling.

**Standard of Review**

"Because exhaustion of administrative remedies is a matter in

abatement and not generally an adjudication on the merits, an exhaustion

defense . . . is not ordinarily the proper subject for a summary judgment;

instead, it 'should be raised in a motion to dismiss, or be treated as such if

raised in a motion for summary judgment.'"  Bryant, 530 F.3d at 1374–75

(quotation omitted).  "Where exhaustion—like jurisdiction, venue, and

service of process—is treated as a matter in abatement and not an

adjudication on the merits, it is proper for a judge to consider facts outside

of the pleadings and to resolve factual disputes so long as the factual

disputes do not decide the merits and the parties have sufficient

opportunity to develop a record."  530 F.3d at 1376.  There is no need for

"jury trials to resolve factual disputes over the preliminary issue of

exhaustion" as the facts pertaining to exhaustion do not bear on the merits of Plaintiff's claim.  *Id.* at 1376-77.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The parties were provided sufficient time to develop the record and provide all relevant information to the Court and it is appropriate for this Court to act "as the factfinder" in determining whether Plaintiff had access to the grievance process to report his alleged physical abuse by Defendant Raynard.  530 F.3d at 1377.

An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.
1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is
insufficient. "Where the record taken as a whole could not lead a rational
trier of fact to find for the nonmoving party, there is no genuine issue for
trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation
marks omitted).

**Record Evidence**

Plaintiff had a stroke on June 11, 2022,[4] and was, thereafter,
transported to the hospital where he remained for 4½ days. ECF No. 48 at
1. Plaintiff was returned to Gulf Correctional Institution only for a day and a
half before being transferred to the infirmary at Calhoun Correctional
Institution on June 17, 2022. *Id.* For the first week there, Plaintiff testified[5]
that he was "kept in bed" and continued to experience "mild paralysis" on
the right side. *Id.* at 2. Plaintiff however, testified in the hearing that he
writes with his left hand.

---

[4] Plaintiff testified in the hearing that the date of the underlying incident was June
11th and not in July as alleged in the second amended complaint.

[5] Plaintiff's amended declaration, ECF No. 48, constitutes admissible testimony as
his statements were sworn under penalty of perjury. *Id.* at 2..

On June 27, 2022, Plaintiff sent an inmate request to the warden, seeking an extension of time to file a grievance concerning the June 11th events. *Id.* at 2. He said that he did not request a specific length of time for the extension, he merely advised that he was recovering from a stroke and was in the infirmary. He received no response. Plaintiff testified in the evidentiary hearing that he does not have a copy of that request because such a request, as well as an informal grievance, is submitted on a single sheet of paper. An inmate will only have a copy if the DOC responds.

Plaintiff said that he filed an informal grievance on July 23, 2022, even though he had not received a response to his request for additional time. ECF No. 48 at 2. During the hearing, Plaintiff explained that he turned it in to the officer who was supervising the infirmary that day. Plaintiff does not know the name of that officer as they rotated on a regular basis. Plaintiff did not retain a copy, nor make himself an identical written copy, of this informal grievance.

Plaintiff then submitted a second informal grievance on August 10, 2022. ECF No. 48 at 2. He testified that he did so in the same manner as the first grievance - handing it to the supervising officer. Both of those grievances were submitted while Plaintiff was housed at Calhoun C.I.

Case No. 4:23cv273-MW-MAF

Again, Plaintiff did not retain a copy, nor make himself an identical written copy, of this informal grievance.

Plaintiff was transferred to Wakulla Correctional Institution Annex later that same day, August 10th.  ECF No. 48 at 2.  While there, Plaintiff testified that he filed two more informal grievances on August 24, 2022.  *Id.* Plaintiff said one grievance was addressed to the warden at Wakulla C.I. where he was currently housed, and the other was addressed to the warden at Gulf C.I. where the event occurred.  *Id.*  Plaintiff testified that those grievances were placed in the grievance box by the chow hall. Plaintiff did not retain a copy, nor make himself an identical written copy, of either of those informal grievances.  *Id.*

Plaintiff also testified that in his informal grievances, he complained about being placed in isolation for about 10 hours after suffering a stroke and that the next morning, Defendant Raynard came into his cell with a nurse and physically attacked him for not getting up as directed.  Plaintiff said he also mentioned that he had previously requested an extension of time.  Further, as for the August 24th grievances, Plaintiff said he mentioned that he had filed prior grievances but had not received a response.

Case No. 4:23cv273-MW-MAF

Plaintiff acknowledged in the hearing that he had previously filed grievances over the years, sometimes receiving a response and sometimes not.  He said if he did not get a response, he "mostly" just threw them away and lost interest in pursuing them.  He admitted awareness of the grievance process - that if prison officials do not respond, he could proceed to the next level or go to court.

John Alan McManes testified at the hearing as well.  Mr. McManes is the chief of policy management and inmate appeals for the Department of Corrections.  He explained the grievance process and testified that a record of all grievances are maintained in the Department's system.  He said there were no grievances logged or created about the incident.  The only grievance filed close in time to the incident was an informal grievance on September 23, 2022, and that was about a classification matter.  ECF No. 39-1 at 3.  That grievance was denied.  On October 4, 2022, Plaintiff filed an informal grievance about a tablet issue.  *Id.*  That grievance was approved.  *Id.*  Plaintiff filed another informal grievance on October 10, 2022, about inmate banking, and that grievance was denied.  *Id.*  Between September 2022 and 2023, Plaintiff filed 19 informal grievances, 6 of which were approved.  ECF No. 39-1 at 3-4.  Although the evidence revealed

Plaintiff had filed formal grievances and grievance appeals, none were filed

between June and December 2022.  ECF No. 39-1 at 6, 8.

Mr. McManes testified that Department rules require the collection of

grievances from all areas of an institution, Monday through Friday.

Grievances are either placed in secured locked boxes, or staff collect

grievances in segregated housing units and in the infirmary.  McManes

also said that they highly discourage inmates from handing grievances to

security staff to keep the grievance process as secure as possible.

Plaintiff, however, testified that the person he gave his grievance to while

he was in the infirmary at Calhoun C.I. was the officer in charge and not an

official collecting grievances.

Plaintiff was asked why he could not have filed his informal grievance

on June 27th instead of requesting an extension of time.  He said that he

was not sure how he "wanted to word it."  He also said that he hoped the

request for the extension of time would stop the clock, although he knew

there was a time limit for filing the grievance.  Plaintiff also acknowledged

that he filed four informal grievances and never filed a formal grievance.

He testified that he did not believe he would get a response because the

issue concerned an officer.  He said he could not figure out what else to do, so he decided to file this case because he could not force a response.

Notably, Plaintiff also testified in the hearing that he sent handwritten copies of his last two informal grievances to F.D.L.E. and asked the agency to hold the records for him as proof that he had filed.  However, Plaintiff said that when he requested a copy later after filing this suit, he was told that he had to pay to receive public records.  Plaintiff said he lacked the financial resources to pay so he could not obtain the copy of his grievance, but he did say that he had a copy of the letter from F.D.L.E. in his cell.[6]

Following the hearing, Defendant filed an amended status report which advised that counsel contacted FDLE in an effort to obtain a copy of Plaintiff's request for copies.  A public records search was undertaken, but no records were located to confirm a request was received from Plaintiff or that a request for payment was sent to Plaintiff.  ECF No. 57 at 2.

Plaintiff did not submit any additional supplementary evidence. However, in reviewing this case, the Court has located several letters

---

[6] At the conclusion of the evidentiary hearing, the parties were informed that they could present additional supplemental evidence.  In particular, Plaintiff was directed to search his cell and provide the copy of the letter from FDLE which would substantiate his testimony and the Court could determine that Plaintiff's grievance raised the issue of Defendant's alleged conduct.

Case No. 4:23cv273-MW-MAF

which Plaintiff attached to his initial complaint, ECF No. 1, filed on June 28,

2023.  One letter was sent by Plaintiff to the attention of the "I.G. Office"

[Inspector General's Office of the Florida Department of Corrections].  ECF

No. 1 at 8.  The other letter was directed to the attention of the F.D.L.E.

ECF No. 1 at 9.  In both letters, Plaintiff said that he wrote to them last year

about an incident in which he "was the victim of a battery" by a correctional

officer.  *Id.* at 8-9.  He requested to know if the investigation had been

completed and, if possible, could he receive a copy of the results and the

case number.  *Id.*  Both letters have a DOC stamp which reveals they were

provided to prison staff to mail for Plaintiff on June 1, 2023.  *Id.*

Plaintiff received responses from the Inspector General's Office.

ECF No. 1 at 10-11.  The first letter was dated June 6, 2023, and said that

it appeared Plaintiff was making a public records request and that such

requests must first be directed to Plaintiff's classification officer.  *Id.* at 10.

Further, Plaintiff must demonstrate "exceptional need" for the information

which must also be "otherwise unavailable."  *Id.*  The second letter was

dated June 13, 2023, and was substantially the same, also from the

Inspector General's Office.  *Id.* at 11.

Case No. 4:23cv273-MW-MAF

**Analysis**

In enacting the Prison Litigation Reform Act [PLRA], Congress

mandated that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a). The exhaustion requirement of § 1997e(a) is mandatory.

Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Bryant, 530

F.3d at 1374, n.10. Courts lack discretion to waive this requirement or

provide continuances of prisoner litigation in the event that a claim has not

been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also*

Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)

(holding that "the PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong");

Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000).

A prisoner must comply with the process set forth and established by

the State's grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190,

1193 (11th Cir. 1999). Thus, § 1997e(a) of the PLRA requires "proper

exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements); Jones, 549 U.S. at 218, 127 S. Ct. 910 (quoted in Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1217-18 (11th Cir. 2010) ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'")).

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103. The Department's process outlines that an inmate must proceed through a three-step grievance process, and that process imposes certain time limits. Rule 33-103.011 requires that an informal grievance "[m]ust be received within 20 days of when the incident or action being grieved occurred unless the inmate" has obtained approval for an extension of time.[7]  FLA. ADMIN.

---

[7] The Rule shows an inmate may submit a written request "for a 45 day extension to file an informal grievance about being physically restrained during pregnancy, labor or post-partum recovery pursuant to rule 33-602.211, F.A.C."  FLA. ADMIN. CODE R. 33-103.011(1)(a).  The request mst be submitted on an Inmate Request form must be "received within 20 days of the application of restraints."  Id.  The Rule states that an extension will "be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner."  FLA. ADMIN. CODE R. 33-103.011(2).  While it is clear that inmates can request an extension of time, it is not clear that a request would be granted unless

CODE R. 33-103.011(1)(a).  A formal grievance "[m]ust "be received no later

than 15 calendar days from . . . [t]he date on which the incident or action

being grieved occurred if an informal grievance was not filed . . . ."  FLA.

ADMIN. CODE R. 33-103.011(1)(b).  A grievance appeal "[m]ust be received

within 15 calendar days from the date the response to the formal grievance

is returned to the inmate."  FLA. ADMIN. CODE R. 33-103.011(1)(c).

In this case, it is clear that Plaintiff did not proceed through the three

steps of the grievance process.  Even accepting Plaintiff's version of facts

as true, Plaintiff only contends that he attempted to file four informal

grievances to which he received no response.  Plaintiff never took the

additional step of filing a formal grievance (or appeal if that were denied).

Plaintiff's incident occurred on June 11, 2022.  Pursuant to the rules

of the Department, Plaintiff should have submitted an informal grievance

within 20 calendar days, or by July 1, 2022.  Plaintiff did not do so.  Had

Plaintiff submitted an informal grievance instead of a request for an

extension of time on June 27th, he would have submitted a timely

grievance.  Plaintiff did not do so, however, but - accepting his testimony as

true and credible - Plaintiff waited until July 23, 2002, to submit his first

_____

related to restraint during pregnancy, labor, or post-partum recovery.

Case No. 4:23cv273-MW-MAF

informal grievance.  A grievance submitted on July 23 would be 42 days after the incident and such a grievance would have been denied as untimely.

The evidence is undisputed that Plaintiff did not file a proper grievance within the relevant time frame.  At best, Plaintiff filed a request for extension of time within the grievance period.  Moreover, even if this Court were to consider the informal grievances to have been timely filed, Plaintiff did not exhaust all three steps of the grievance process as required.  That conclusion necessarily means that Plaintiff did not exhaust administrative remedies.

Notably, at the motion to dismiss stage of this litigation, Plaintiff said he attempted to exhaust administrative remedies but claimed the grievance process was not "available" to him.  It is true that the exhaustion requirement of the PLRA "hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  Ross v. Blake, 578 U.S. 632, 642, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016).  In other words, courts must apply the grievance statute "to the real-world workings of prison grievance

systems." <u>Ross</u>, 578 U.S. at 643, 136 S. Ct. at 1859.  In light of the evidence submitted, however, Plaintiff's argument must be rejected.

Plaintiff is aware of the grievance process and the steps which must be taken.  He presented no evidence that any prison official thwarted or otherwise prevented him from filing a grievance.  Instead, the evidence shows only that Plaintiff delayed filing his informal grievance.  Since Plaintiff was physically able to request an extension of time, he could have submitted his informal grievance at that time.  He failed to present any legitimate reason for not doing so.

One additional point is worth noting.  Even under Plaintiff's version of the facts, it does not appear that Plaintiff gave his grievance to the appropriate prison official when he was in the infirmary.  The evidence revealed that a specific prison official is tasked with collecting grievances from prisoners in areas where the prisoner cannot physically put a grievance in the secured box.  Plaintiff gave his grievance to a supervisor, not the grievance official.  Even if one accepts that Plaintiff provided an informal grievance, his failure to deliver it to the right official may explain why Plaintiff did not receive a response to his informal grievance, even though it was submitted belatedly 42 days after the incident.

Case No. 4:23cv273-MW-MAF

Moreover, the Department's Rules state that "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." FLA. ADMIN. CODE R. FLA. ADMIN. CODE R. 33-103.011(4). "If this occurs, the complainant must clearly indicate this fact when filing at the next step." *Id.* If the time limit expires at the central office level of review, that is, a grievance appeal, the inmate "shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." *Id.* Plaintiff admits that he never filed a formal grievance or grievance appeal seeking review of any of his informal grievances.

Had Plaintiff properly submitted a timely informal grievance, he could have filed a grievance appeal after the expiration of the 15-day response time. If no response was received to that grievance, Plaintiff could have then filed an appeal at the central office level of review. However, Plaintiff is not permitted to skip steps in the grievance process and then proceed with judicial remedies. Therefore, because Plaintiff did not exhaust available administrative remedies, Defendant's motion for summary judgment, ECF No. 36, should be granted and this case closed.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that

Defendant Raynard's motion for summary judgment, ECF No. 36, be

**GRANTED** and this case be closed because Plaintiff did not exhaust

administrative remedies as required by 42 U.S.C. § 1997e(a).

**IN CHAMBERS** at Tallahassee, Florida, on July 21, 2025.


  S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**